PER CURIAM.
In this workers’ compensation case, the employer/carrier (E/C) argues the Judge of Compensation Claims (JCC) erred by finding Claimant did not intentionally or knowingly make misrepresentations for the purpose of securing workers’ compensation benefits, and consequently by concluding Claimant is not disqualified from receiving all compensation under the provisions of section 440.09(4)(a), Florida Statutes (2007). Because competent substantial evidence (CSE) supports the JCC’s findings of fact regarding Claimant’s lack of wrongful intent, and further, because the E/C fails to raise any legal basis for reversal, we affirm.
Summary Affirmance Procedure
After the E/C filed its initial brief, this court entered an order advising the parties that the order of the JCC was being reviewed under the summary disposition procedure provided for in Florida Rule of Appellate Procedure 9.315(a), relieving Claimant of the obligation to file an answer brief. Because the E/C fails to raise a preliminary basis for reversal it its initial brief, but merely argues the existence of evidence which, if viewed differently by the JCC, might have resulted in a ruling favorable to the E/C, summary affirmance is appropriate in this case. See Fla. Detroit Diesel v. Nathai, 28 So.3d 182 (Fla. 1st DCA 2010) (explaining summary affir-mance procedure); see also Cumberland Farms, Inc. v. Manning, 685 So.2d 64 (Fla. 1st DCA 1996) (explaining this court will never reverse workers’ compensation simply because competent substantial evidence supports losing side’s view of case).
Background
In this case, Claimant, a welder, sustained a compensable accident and injury resulting in back surgery. After his surgery, Claimant returned to work for the Employer in a position that was similar, but lighter in exertion than his pre-injury welding/fabrication job. Notwithstanding the reduced lifting requirements of the modified position, Claimant was still required to stand on a constant basis — an activity which Claimant testified was difficult because of his injury. After working in this modified position for approximately seven months, Claimant submitted a letter of resignation to the Employer indicating that he was grateful for the opportunities provided, but, for economic reasons, he was accepting a new job with another company, and was “looking forward to getting back to working hard 40 hours per week on a regular basis.” The letter made no mention of Claimant’s injuries, his workers’ compensation claim, or any difficulties he was having in performing the modified job.
Immediately after his resignation, Claimant began working as a material handler at Savage Services Corporation (Savage), a company which, for relevant purposes, loads and unloads sulfur and su-perphosphoric acid for shipment by rail and truck. Claimant disclosed his back injury and surgery to Savage, and was required to undergo a physical examination prior to beginning the job. Claimant’s job with Savage primarily required him to drive a train for short distances while seated, and monitor computer screens while seated in an air-conditioned control room. Occasionally, however, Claimant was required to unfasten bolts with a wrench, and Claimant was provided assistance if a particular bolt was too difficult to unbind. Claimant worked for Savage for approximately one year, and during this time, Claimant worked considerable overtime but, contrary to information contained in the letter of resignation, *644 he made less money than he did while working for the Employer.
After a year on his new job, Claimant began experiencing complications due to his compensable injuries, and he was taken out of work by his authorized physician. Claimant'was then terminated by Savage because it could not accommodate his restrictions. Thereafter, Claimant filed a petition for benefits (PFB) against the E/C for temporary indemnity benefits for the period following his last day of work for Savage, and continuing. The E/C immediately denied compensation on the basis that Claimant’s disability was not caused by his compensable injuries — a factual proposition asserted with no apparent factual basis, and one which was rejected by all testifying physicians, including the E/C’s independent medical examiner.
The E/C took Claimant’s deposition, and Claimant testified that, although he was able to perform the modified job with the Employer after his surgery, he could not do so easily, and the standing was “really bad on” his back. Claimant then testified that the reason he was no longer working for the Employer was because he could not do the duties required of him. Claimant also testified, to the extent he was asked, about the actual duties of his job with Savage, and expressed his conclusory opinion that this job was not very physical. The E/C then denied all benefits based on allegations that Claimant made knowing and intentional misrepresentations for the purpose of securing compensation benefits. Specifically, the E/C alleged that Claimant’s letter of resignation, wherein he represented that he was leaving his employment for economic reasons, and his testimonial characterization of the (non) physical nature of the job with Savage, were false statements made for the purpose of securing compensation benefits.
At trial, Claimant testified that he in fact left his employment with the Employer because of the physical difficulties he was having, and not for economic reasons as stated in the letter of resignation. Claimant explained that his intent in writing the letter of resignation in the manner chosen was to “keep the door open” in case he experienced medical recovery sufficient to allow him to return to the job. Claimant also explained his specific job duties at Savage (which testimony was corroborated by a shift manager), and again offered his assessment that in his opinion, the work was not very physical, especially considering his prior work experience. The JCC found Claimant credible, and accordingly found that the E/C failed to establish Claimant made intentional or knowing misrepresentations for the purpose of securing workers’ compensation benefits.
On appeal, the E/C argues because Claimant’s statements regarding the reasons why he left his employment were false, and made during the pendency of his workers’ compensation claim, he should have been disqualified from all benefits available under chapter 440. Similarly, the E/C argues because Claimant’s employment with Savage was more physical than characterized by Claimant, disqualification under section 440.09(4)(a), Florida Statutes (2007), is required as a matter of law.
Resignation Letter
The E/C initially asserts that Claimant’s letter of resignation — tendered to his Employer (not its insurance carrier) on September 23, 2008, some 395 days prior to the commencement of his disability — is false, and was made for the purpose of securing compensation benefits. Nevertheless, the E/C fails to provide any syllogistic or legal reasoning as to how this court can, or should, make a factual finding (which is not the function of this court) *645 that Claimant’s omissions in his letter of resignation (which bear no logical, factual, or legal connection to any benefits awarda-ble under the Workers’ Compensation Law) were made with the specific intent of enhancing his workers’ compensation claim or securing workers’ compensation benefits.
When an objective misrepresentation has been made, the ultimate question a JCC must answer involves intent, that is, whether the claimant subjectively believed or intended the statement, when made, to be false, and whether the claimant subjectively believed the statement would assist him in securing workers’ compensation benefits. See Arreola v. Admin. Concepts, 17 So.Bd 792, 794 (Fla. 1st DCA 2009). A claimant’s state of mind is an issue of fact to be determined by the JCC by evaluating the evidence, including the credibility and demeanor of the witnesses. See id. It is not axiomatic that providing false information following a compensable accident will disqualify a Claimant from receiving benefits. Id.
Here, the JCC believed Claimant’s testimony that he failed to tell the Employer of the true reasons for his resignation to protect his employment opportunities in the future, not to enhance or advance his compensation claim. The E/C fails to appreciate that the applicability of section 440.09(4)(a) (the provision of the Workers’ Compensation Law which allows for the forfeiture of benefits by the JCC) is predicated on a specific intent to deceive for the specific purpose of securing compensation benefits and, if no such intent is present and sufficiently proven to the satisfaction of the JCC, this statutory provision will not result in forfeiture of workers’ compensation benefits — even where the claimant might be subject to criminal prosecution for the same offense. See Matrix Employee Leasing v. Hernandez, 975 So.2d 1217 (Fla. 1st DCA 2008) (explaining even where it is established that claimant made criminal misrepresentation for purpose of securing employment, section 440.09(4)(a) does not allow for disqualification from workers’ compensation benefits, where criminal misrepresentation was not made for specific purpose of securing compensation benefits); see also Quiroz v. Health Cent. Hosp., 929 So.2d 563 (Fla. 1st DCA 2006) (reversing for lack of CSE JCC’s disqualification under section 440.09(4), where claimant’s misrepresentation related to his attempts to retain employment, and bore no relationship to attempt to secure benefits).
Next, in stark contrast to its initial argument, the E/C asserts that the letter of resignation was likely true (Claimant was capable of working hard) and, in accordance with this premise, argues that Claimant’s testimony as to why he left the Employer (because the work was too difficult) must therefore be false, and is thus, a disqualifying statement under section 440.09(4)(a). To the extent this argument warrants analysis, the true reason for Claimant’s resignation from his job with the Employer is an issue of fact, and here the JCC found Claimant resigned because the work was too difficult. Because Claimant’s testimony, which the JCC found credible, supports this finding, there is no basis for this court to engage in fact-finding or retry the case based on a view of the evidence rejected by the JCC. See Manning, 685 So.2d at 64. Accordingly, we affirm the JCC’s rejection of the E/C’s misrepresentation defense based on Claimant’s letter of resignation.
Claimant’s Testimony Regarding the “Physical” Nature of His New Job
The E/C’s argument on this point centers, not upon Claimant’s actual description of his job duties with Savage, but *646 rather, on his conclusory opinion as to how “physical” the job was. At trial, Claimant testified that his employment at Savage was not very physical because in his opinion, and based on his past work experience, the work was not very physical. The JCC accepted this testimony as truthful. Generally, opinion testimony (expressed in good faith) is not actionable as a misrepresentation because it involves opinions, not facts.[1] See generally Doyle v. Dep’t of Bus. & Prof'l Regulation, 713 So.2d 1040 (Fla. 1st DCA 1998) (concluding employee’s denial of using “vulgar” language, where facts established utterance of words reserved for R-rated movies, was assertion of legal conclusion or matter of personal opinion and was, thus, not actionable as false statement under rule prohibiting “deliberately inaccurate, incorrect or misleading” statement). Nevertheless, here, it is unnecessary to delve into a parsing of opinion from fact, because the JCC found Claimant’s statements as to the “physical” nature of his job were not objectively false and were accurate. Because disqualification from benefits under section 440.09(4)(a) is, for relevant purposes here, predicated on the intentional or knowing commission of a criminal offense found in section 440.105, Florida Statutes, and further, because the criminal offenses contained in section 440.105 are predicated on statements which are objectively false, fraudulent, or misleading, see Dieujuste v. J. Dodd Plumbing, Inc., 3 So.3d 1275 (Fla. 1st DCA 2009) (reversing forfeiture of benefits where evidence failed to establish claimant’s statements to doctors were objectively false), there is no reason to further analyze the JCC’s findings regarding Claimant’s intent (which findings are amply supported by the record), because the statement which was alleged by the E/C to be false, was not found by the JCC to be false, fraudulent, or misleading. Accordingly, we affirm the JCC’s rejection of the E/C’s misrepresentation defense as it pertains to Claimant’s statements regarding the physical nature of his job with Savage.
Conclusion
In essence, the E/C has interpreted section 440.09(4)(a) as a means of disqualifying a claimant from benefits whenever a statement is made during the pendency of a workers’ compensation case that is subject to question, cross-examination, or impeachment — it is not. The bedrock of our adversarial system is a party’s right to cross-examine or impeach for the purpose of proving that facts are not exactly as the individual has testified. See, e.g., Bordelon v. State, 908 So.2d 543, 546 (Fla. 1st DCA 2005) (“Eschewing the rack and screw, we count on cross-examination after direct examination or, when redirect examination yields new matter, recross-examination after redirect examination, to ferret out the truth from any and all witnesses, and to gain a fuller understanding of the import of their testimony.”). Because all testimony is, to a certain extent, shaded by the personal experience and subjective perceptions of the providing witness, a revelation that a witnesses’ experience or perception is different than that of the fact-finder or another witness is not, in and of itself, evidence of a willful or knowing intent to deceive; rather, it is commonly a demonstration of the varying degrees to which even well-intentioned individuals may interpret (or misinterpret), and later relay, objective events. It is only where a sufficient showing of a knowing or intentional misrepresentation for the specific purpose of deceiving and securing compensation benefits is demonstrated to the satisfaction *647 of the JCC, that section 440.09(a) operates to divest a claimant of entitlement to compensation benefits.
Based on the foregoing, the order on appeal is AFFIRMED in all respects.
WOLF, DAVIS, and WETHERELL, JJ., concur.

. We specifically do not reach the issue of whether opinion testimony can ever qualify as á disqualifying misrepresentation under section 440.09(4)(a).